**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

EMERSON TUCKER,                     :
                                    :     Civil Action No. 08-2156 (DMC)
            Plaintiff,              :
                                    :
      v.                            :     **OPINION**
                                    :
NEW YORK POLICE DEPARTMENT,         :
et al.,                             :
                                    :
            Defendants.             :

**APPEARANCES:**

Plaintiff pro se
Emerson Tucker
Cook County Jail
P.O. Box 089002
Chicago, IL 60608

**CAVANAUGH**, District Judge

    Plaintiff Emerson Tucker, a prisoner confined at Cook County Jail in Chicago, Illinois, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

    At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.[1]

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that on May 14, 2007, without his knowledge, his sister Margo Green contacted officers of the New York Police Department ("NYPD") and advised them that Plaintiff was wanted for questioning about a murder and further advised them where he could be found in Newark, New Jersey.

On that same day, in Newark, Plaintiff was approached and stopped by NYPD Detectives Dexter Honora and Steven.  Detective Honora told Plaintiff that he wanted Plaintiff to accompany the detectives to New York City for questioning.  In response to Plaintiff's question, the detectives told Plaintiff that he was not being arrested.  When Plaintiff attempted to walk away,

---

[1] This Court earlier entered Orders [5, 8] granting leave to proceed in forma pauperis, and then vacating that Order, as a clerical mistake.  The second Order did not amount to a denial of Plaintiff's application, but rather left it pending for later decision.  Plaintiff filed a notice of appeal [10] from the Order [8] vacating the first Order [5] granting leave to proceed in forma pauperis.  Thereafter, Plaintiff filed a Motion [14] for reconsideration of that Order [8].  As the Order [8] appealed from was neither a final nor otherwise appealable order, this Court retains jurisdiction to decide the application for leave to proceed in forma pauperis as well as to screen the Complaint for dismissal.  See Venen v. Sweet, 758 F.2d 117 (3d Cir. 1985).  The Motion [14] for reconsideration will be denied as moot.

however, the detectives told him to get into their car "or else."
Plaintiff alleges that, in fear, he got into the car.  Plaintiff
alleges that the detectives then drove him from New Jersey to New
York City, without his consent, without an arrest warrant or
fugitive warrant, and without probable cause to arrest him.
Plaintiff alleges that during the drive to New York City,
Detective Honora made two calls to an unknown person in which he
stated, in effect, "yes everything are O.K. and I am coming in
now."  Plaintiff alleges that his arrest in this matter is
pursuant to a pattern and practice of the New York Police
Department of coming into New Jersey and arresting African-
American suspects without an appropriate warrant.

The detectives drove Plaintiff to a police station in
Brooklyn, New York, where they took from him personal property
worth several thousand dollars.  Plaintiff alleges that he has
receipts for this property, but that the property has not been
returned to him.  Plaintiff alleges that he was placed in a jail
cell at this time.  Plaintiff alleges that he was never
"Mirandized" and that he requested counsel, but that Detectives
Honora and Steven denied him counsel and continued to question
him about two murders in New York.  Later that evening, Plaintiff
was transported to "Central Booking" to await arraignment.

The next evening, May 15, 2007, Detectives Honora and Thomas
took Plaintiff from Central Booking back to Precinct 84.

3

Plaintiff alleges that John/Jane Doe Nos. 1 and 2, officers of
the New York City Department of Corrections or New York Police
Department, allowed the detectives to remove Plaintiff from
Central Booking.  Plaintiff alleges that when he was returned to
Precinct 84, Detectives Honora and John Doe No. 4 took him into
the restroom where they made him remove his clothes and then took
photographs of him.  Plaintiff alleges that the detectives used
excessive force, placing him in handcuffs so tight that they
caused him to bleed.  A supervisor John Doe No. 5 watched and
provided another camera for this procedure.  Plaintiff alleges
that John Doe No. 5 stated that the photographs were being made
at the request of the Chicago Police Department for use in a
murder investigation there in which Plaintiff was a suspect.
Plaintiff alleges that Chicago detectives John Climack and Carlo
requested the photographs.[2]  The next day, Plaintiff was returned
to "Central Booking" to continue to await arraignment.  Plaintiff
was arraigned on May 18, 2007.

Plaintiff alleges that, at his arraignment, the government
was given until September 5, 2007, to resubmit the complaint
against Plaintiff to the grand jury for an indictment decision.
Plaintiff alleges that he was brought to court on September 5,

---

[2] Plaintiff alleges that the prosecuting attorney in Chicago
used these photographs to argue successfully that Plaintiff
should be denied bail and to obtain additional evidence in the
form of fingerprints and a DNA sample.

2007, too late for his hearing, and that the deadline for indictment was extended to September 30, 2007.  Plaintiff alleges that he was deliberately brought to court late in order to extend the indictment deadline.  Plaintiff alleges that the complaint was left open for indictment for six months.  Plaintiff does not allege the outcome of the New York murder investigation.[3] Plaintiff alleges that various news organizations reported that he was being held as a "serial killer."

Plaintiff seeks compensatory and punitive damages.[4]

_____

[3] Plaintiff was extradited to Illinois on January 11, 2008, to stand trial on murder charges pending there.

[4] Plaintiff names as defendants: the New York Police Department; Detective Dexter Honora; Detective Steven; Detective Thomas; Detectives John Doe Nos. 1 through 6; New York Police Precinct # 84; the City of Brooklyn; the Office of the District Attorney, Kings County; the City of New York, the Office of the District Attorney, New York; the District Attorney, New York County; Mayor Mike Bloomberg; the New York City Department of Corrections; Martin Horn; the Commissioner of the New York City Department of Corrections; the Civilian Complaint Review Board; Unidentified John/Jane Does of the Cities of New York and Brooklyn; the City of Newark, New Jersey; the Police Department of Newark, New Jersey; the Mayor of the City of Newark, New Jersey; Essex County Prosecutor Paula Dow; New Jersey Governor Jon Corzine; Unidentified John/Jane Does of the City of Newark, New Jersey; the City of Chicago; Detective John Climack; Detective Carlo; Chicago Police Superintendent Jody P. Weis; the Office of the District Attorney of Cook County, Illinois; Cook County District Attorney Anita Alverz; Unidentified John/Jane Does of Chicago; Thomas Dart; Margo Green; the Day-Care Center of Margo Green; the Chicago Sun-Times Newspaper; the Chicago Tribune Newspaper; the Star-Ledger Newspaper of Newark, New Jersey; the New York Times Newspaper; the New York Post Newspaper; the New York Daily Newspaper; CBS Television News Broadcast; ABC Television News Broadcast; NBC Television Broadcast; and CNN Cable News Network.

II.  <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

This Court must dismiss, at the earliest practicable time,
certain <u>in forma pauperis</u> and prisoner actions that are
frivolous, malicious, fail to state a claim, or seek monetary
relief from a defendant who is immune from such relief.  <u>See</u> 28
U.S.C. § 1915(e)(2) (<u>in forma pauperis</u> actions); 28 U.S.C.
§ 1915A (actions in which prisoner seeks redress from a
governmental defendant); 42 U.S.C. § 1997e (prisoner actions
brought with respect to prison conditions).

In determining the sufficiency of a <u>pro se</u> complaint, the
Court must be mindful to construe it liberally in favor of the
plaintiff.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United
States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must
"accept as true all of the allegations in the complaint and all
reasonable inferences that can be drawn therefrom, and view them
in the light most favorable to the plaintiff." <u>Morse v. Lower
Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

A complaint must plead facts sufficient at least to
"suggest" a basis for liability.  <u>Spruill v. Gillis</u>, 372 F.3d
218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary;
the statement need only 'give the defendant fair notice of what
the ... claim is and the grounds upon which it rests.'" <u>Erickson
v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the

6

> "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will
> not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106
> S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to
> dismiss, courts "are not bound to accept as true a
> legal conclusion couched as a factual allegation").
> Factual allegations must be enough to raise a right to
> relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007)

(citations omitted).  <u>See also</u> <u>Morse v. Lower Merion School</u>

<u>Dist.</u>, 132 F.3d at 906 (a court need not credit a <u>pro se</u>

plaintiff's "bald assertions" or "legal conclusions").

Where a complaint can be remedied by an amendment, a

district court may not dismiss the complaint with prejudice, but

must permit the amendment.  <u>Denton v. Hernandez</u>, 504 U.S. 25, 34

(1992); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d

Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); <u>Shane</u>

<u>v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal

pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg</u>

<u>County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

In addition, a complaint must comply with the Federal Rules

of Civil Procedure.  Rule 8(a)(2) requires that a complaint

contain "a short and plain statement of the claim showing that

the pleader is entitled to relief."  Rule 10(b) provides:

> A party must state its claims ... in numbered
> paragraphs, each limited as far as practicable to a
> single set of circumstances.  ... If doing so would
> promote clarity, each claim founded on a separate
> transaction or occurrence ... must be stated in a
> separate count or defense.

Rule 20(a)(2) controls the permissive joinder of defendants in

pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants
> if:
>> (A) any right to relief is asserted against them
>> jointly, severally, or in the alternative with respect
>> to or arising out of the same transaction, occurrence,
>> or series of transactions or occurrences; and
>> (B) any question of law or fact common to all
>> defendants will arise in the action.

(emphasis added). See, e.g., Pruden v. SCI Camp Hill, 252

Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th

Cir. 2007).

### III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C.

§ 1983 for certain violations of his constitutional rights.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must

allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting

under color of state law. West v. Atkins, 487 U.S. 42, 48

8

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon,

915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516 U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000).  A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. Monell, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict."  Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)).  A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law."  [Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]
>
> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983.  The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy."  The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself."  Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).[5]

## IV.   ANALYSIS

### A.   False Arrest and False Imprisonment

Plaintiff alleges that Detectives Dexter Honora and Steven arrested him without probable cause and without a warrant.  He alleges that he was detained pursuant to that arrest for approximately 5 days, until his arraignment.[6]

---

[5] Except as otherwise specifically noted herein, the claims against the following defendants will be dismissed with prejudice, as being based solely upon an untenable theory of vicarious liability or as being without any factual allegation of personal involvement: the New York Police Department; New York Police Precinct # 84; City of Brooklyn; the Office of the District Attorney, Kings County; City of New York; Office of the District Attorney, New York; District Attorney, New York; District Attorney, New York County; Mike Bloomberg; New York City Department of Corrections; Martin Horn; Commissioner of New York City Department of Corrections; Civilian Complaint Review Board; Unidentified John/Jane Does of the Cities of Both New York and Brooklyn; City of Newark, New Jersey; Police Department of Newark, New Jersey; Mayor of City of Newark, New Jersey; Essex County Prosecutor Paula Dow; Governor Jon Corzine; Unidentified John/Jane Does of the City of Newark, New Jersey; City of Chicago; Chicago Police Superintendent Jody P. Weis; Office of District Attorney, Cook County; Cook County District Attorney Anita Alverz; Unidentified John/Jane Does of Chicago; Thomas Dart.

[6] Although it is not clear from the Complaint, it appears that Plaintiff also may seek to assert a claim for false imprisonment after the time of his arraignment.  A false imprisonment ends as soon as the victim becomes held pursuant to legal process, here, pursuant to the arraignment.  "Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process."  Wallace v. Kato, 127 S.Ct. 1091, 1096 (2007) (citations and footnote omitted).  Plaintiff's claim for malicious prosecution is addressed separately, supra.

11

The Fourth Amendment to the federal Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV.

It is well established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable under § 1983. See Walmsley v. Philadelphia, 872 F.2d 546 (3d Cir. 1989)(citing cases); see also, Albright v. Oliver, 510 U.S. 266, 274 (1994)(a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures). Under New Jersey law, false arrest has been defined as "the constraint of the person without legal justification." Ramirez v. United States, 998 F. Supp. 425, 434 (D.N.J. 1998) (quoting Fleming v. United Postal Service, Inc., 604 A.2d 657, 680 (N.J. Law Div. 1992)).

To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause. Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988). To establish the absence of probable cause, a plaintiff must show "that at the time when the defendant put the proceedings in motion the circumstances were such as not to

12

warrant an ordinary prudent individual in believing that an offense had been committed." Lind v. Schmid, 67 N.J. 255, 262 (1975). "Probable cause . . . requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt." Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). Rather, probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. State of Ohio, 379 U.S. 89, 91 (1964)); Sharrar v. Felsing, 128 F.3d 810, 817 (3d Cir. 1997).

Moreover "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." Groman v. Manalapan, 47 F.3d 628, 636 (3d Cir. 1995); Palma v. Atlantic County, 53 F. Supp. 2d 743, 755 (D.N.J. 1999)(citing Groman). Indeed, the U.S. Supreme Court recently noted that, "False arrest and false imprisonment overlap; the former is a species of the latter." Wallace v. Kato, 127 S.Ct. 1091, 1095 (2007).

The allegations of the Complaint are sufficient to permit the false arrest and false imprisonment claims to proceed as against Detectives Honora and Steven.

13

B.   Strip Search/Photographs

Plaintiff alleges that he was subjected to an unreasonable strip search of his person, through the use of excessive force and on the basis of racial animus, all in violation of the Fourth Amendment, to obtain photographs which have been used already as evidence in a murder case pending against him in Chicago, Illinois.   Plaintiff alleges that this search was conducted by New York Police Detectives Honora, Thomas, and John/Jane Does Nos. 1, 2, 4, and 5, at the request of Chicago Police Detectives John Climack and Carlo.   The allegations of the Complaint are sufficient to state a Fourth Amendment unreasonable search claim against these defendants.

In light of the use of these photographs in the pending criminal case in Chicago, however, this Court will stay this claim until the criminal case is concluded.   See Wallace v. Kato, 127 S.Ct. 1091, 1097-99 (2007).   Should Plaintiff wish to re-open this claim at the conclusion of the criminal case, he must so notify this Court within 90 days after the conclusion of the Illinois criminal case by dismissal of the charge, entry of a not guilty verdict, or conclusion of direct appeal of any conviction.[7]

_____

[7] Pursuant to Wallace v. Kato, 127 S.Ct. at 1097-99, if Plaintiff is ultimately convicted, and if the stayed claim would impugn that conviction, the claim will then be subject to dismissal without prejudice as premature, pursuant to Heck v. Humphrey, 512 U.S. 477 (1994).

C.   Equal Protection Claims

Plaintiff alleges that his arrest without probable cause and without a warrant, and the following detention, were the result of a policy of racial animus on the part of the arresting officers, the New York Police Department, and the City of New York.  He alleges that this conduct violates the Equal Protection Clause of the Fourteenth Amendment and various federal statutes.

1.   The Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)); Artway v. Attorney General of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996).  Despite its sweeping language, though, "[t]he Equal Protection Clause does not forbid classifications.  It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."  Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).

Proof of disparate impact alone, however, is not sufficient to succeed on an equal protection claim;  a plaintiff also must prove that the defendant intended to discriminate.  Village of Arlington Heights v. Metropolitan Housing Development Corp., 429

15

U.S. 252, 264-66 (1977); Washington v. Davis, 426 U.S. 229, 242, 244-45 (1976).   Thus, discriminatory intent must be a motivating factor in the decision, but it need not be the sole motivating factor.   Village of Arlington Heights, 429 U.S. at 265-66.

Once this intentional disparity in treatment is shown, a court will proceed to determine whether the disparity can be justified under the requisite level of scrutiny.   See City of Cleburne, 473 U.S. at 439-40; Plyler v. Doe, 457 U.S. 202, 216-17 (1982); Price v. Cohen, 715 F.2d 87, 91-92 (3d Cir. 1983), cert. denied, 465 U.S. 1032 (1984).   In testing the validity of state legislation or other official action that is alleged to deny equal protection, the "general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."   City of Cleburne, 473 U.S. at 439-40.   The general rule gives way, however, when a statute classifies by race, alienage, or national origin;   these classifications "are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest."   Id. at 440.

Here, Plaintiff alleges differential treatment based upon race.   Specifically, Plaintiff alleges that his arrest without probable cause and without a warrant, by detectives who caused him to get into their car by putting him in fear and who then

16

drove him to New York, was pursuant to a practice and policy of the City of New York, the New York Police Department, and of the arresting Detectives Honora and Steven, that is differentially applied based upon race.  These allegations are sufficient to avoid dismissal at this early stage of the litigation.

    2.    42 U.S.C. § 1981

    Section 1981 provides, in relevant part:

    All persons within the jurisdiction of the United
    States shall have the same right in every State and
    Territory ... to the full and equal benefit of all laws
    and proceedings for the security of persons and
    property as is enjoyed by white citizens, and shall be
    subject to like punishment, pains, penalties, taxes,
    licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

    An allegation that one has been subjected to false arrest and imprisonment on the basis of race states a claim under § 1981.  Cf. Mahone v. Waddle, 564 F.2d 1018, 1028 (3d Cir. 1977), cert. denied, 438 U.S. 904 (1978).  Accordingly, this claim may proceed as against Detectives Honora and Steven, as well as against the City of New York.  See Mahone v. Waddle, 564 F.2d at 1030-31 (municipalities may be held vicariously liable under § 1981 for violations by police officers).

    3.    42 U.S.C. § 1985(2), (3)

    Section 1985 provides, in relevant part:

    (2) Obstructive justice; intimidating party, witness,
    or juror.

17

> ... [I]f two or more persons conspire for the purpose
> of impeding, hindering, obstructing, or defeating, in
> any manner, the due course of justice in any State or
> Territory, with intent to deny to any citizen the equal
> protection of the laws, ...
>
> (3) Depriving persons of rights or privileges
>
> If two or more persons in any State or Territory
> conspire ... for the purpose of depriving, either
> directly or indirectly, any person or class of persons
> of the equal protection of the laws, or of equal
> privileges and immunities under the laws; ... the
> person so injured or deprived may have an action for
> the recovery of damages occasioned by such injury or
> deprivation, against any one or more of the
> conspirators.

42 U.S.C. § 1985(2), (3).

The second clause of § 1985(2) "aims at proscribing conspiracies that interfere with the administration of justice in state courts." Breslin v. Brainard, 2002 WL 31513425, *9 (E.D. Pa. 2002) (citing Kush v. Rutledge, 460 U.S. 719, 724-25 (1983) and Brawer v. Horowitz, 535 F.2d 830, 840 (3d Cir. 1976)). See also Herrmann v. Moore, 576 F.2d 453, 457-58 (2d Cir.) (second clause of § 1985(2) "applies only to conspiracies with respect to judicial proceedings in a State or Territory"), cert. denied, 439 U.S. 1003 (1978).

To state a claim under § 1985(3), one must allege:

> (1) a conspiracy; (2) for the purpose of depriving,
> either directly or indirectly, any person or class of
> persons of the equal protection of the laws, or of
> equal privileges and immunities under the laws; and (3)
> an act in furtherance of the conspiracy; (4) whereby a
> person is either injured in his person or property or
> deprived of any right or privilege of a citizen of the
> United States.

18

United Broth. of Carpenters and Joiners of America, Local 610,
AFL-CIO v. Scott, 463 U.S. 825, 829 (1983).  With respect to the
second element, the conspiracy must be motivated by "some racial,
or perhaps otherwise class-based, invidiously discriminatory
animus." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).

At least one court has held that allegations of race-based
arrest and prosecution on contrived charges states a claim for
violation of the second clause of § 1985(2) and of § 1985(3).
See Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir.
1987).  Accordingly, this claim will be permitted to proceed as
against Detectives Honora and Steven.[8]

4.   42 U.S.C. § 1986

Section 1986 provides, in pertinent part:

> Every person who, having knowledge that any of the
> wrongs conspired to be done, and mentioned in section
> 1985 of this title, are about to be committed, and
> having power to prevent or aid in preventing the
> commission of the same, neglects or refuses so to do,
> if such wrongful act be committed, shall be liable to
> the party injured, or his legal representatives, for
> all damages caused by such wrongful act, which such
> person by reasonable diligence could have prevented;

---

[8] To the extent Plaintiff seeks to assert a claim against
any of the named prosecutors for initiation of prosecution
against him, "a state prosecuting attorney who act[s] within the
scope of his duties in initiating and pursuing a criminal
prosecution" is entitled to absolute immunity.  Imbler v.
Pachtman, 424 U.S. 409, 410 (1976).  Similarly, "acts undertaken
by a prosecutor in preparing for the initiation of judicial
proceedings or for trial, and which occur in the course of his
role as an advocate for the State, are entitled to the
protections of absolute immunity." Buckley v. Fitzsimmons, 509
U.S. 259, 273 (1993).

and such damages may be recovered in an action on the
case; and any number of persons guilty of such wrongful
neglect or refusal may be joined as defendants in the
action ... .

42 U.S.C. § 1986.

Plaintiff alleges generally that defendants Detectives
Honora and Steven violated § 1986 by "conspiring" with various
press organizations and others, after his arrest, to leak false
information that Plaintiff was a "serial killer." These
allegations fail to state a claim under § 1986.

D.   Interrogation Claims

Plaintiff alleges that he was deprived of his constitutional
rights when he was interrogated without being given a warning
about his constitutional rights and without being given an
opportunity to consult with counsel, as he requested.

In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme
Court set forth certain procedural safeguards that must be
employed, to protect an individual's constitutional privilege
against self-incrimination, whenever authorities take an
individual into custody, or otherwise deprive him of his freedom
in any significant way, and subject him to questioning.

To the extent Plaintiff seeks to assert a claim for damages
based directly upon questioning or acquisition of a statement in
violation of his Miranda rights, as opposed to the use of such a
statement at trial, he fails to state a claim. "[V]iolations of
the prophylactic Miranda procedures do not amount to violations

20

of the Constitution itself.  ...  The right protected under the
Fifth Amendment is the right not to be compelled to be a witness
against oneself in a criminal prosecution, whereas the 'right to
counsel' during custodial interrogation recognized in [Miranda[
is merely a procedural safeguard and not a substantive right."
Giuffre v. Bissell, 31 F.3d 1241, 1256 (3d Cir. 1994) (citations
omitted).  Thus, Plaintiff also has no free-standing Fifth
Amendment claim for denial of the right to counsel during
questioning.  See James v. York County Police Dept., 160
Fed.Appx. 126, 133, 2005 WL 3313029, 5 (3d Cir. 2005) (citing
Giuffre).

     This Court expresses no opinion as to whether the use of any
statement obtained from Plaintiff violated the Miranda rule or
his constitutional right to counsel.

E.   Deprivation of Property

     An unauthorized deprivation of property by a state actor,
whether intentional or negligent, does not constitute a violation
of the procedural requirements of the Due Process Clause of the
Fourteenth Amendment if a meaningful post-deprivation remedy for
the loss is available.  Hudson v. Palmer, 468 U.S. 517, 530-36
(1984); Parratt v. Taylor, 451 U.S. 527, 543-44 (1981), overruled
in part on other grounds, Daniels v. Williams, 474 U.S. 327, 328
(1986).  In Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36
(1982), the Supreme Court explained, however, that post-

21

deprivation remedies do not satisfy the Due Process Clause if the deprivation of property is accomplished pursuant to established state procedure rather than through random, unauthorized action. But see Tillman v. Lebanon Co. Correctional Facility, 221 F.3d 410, 421 n.12 (3d. Cir. 2000) (citing United States v. James Daniel Good Real Property, 510 U.S. 43, 53 (1993)) (in "extraordinary situations" such as routine deduction of fees from a prisoner's account even without authorization, post-deprivation remedies may be adequate).

New York provides constitutionally adequate post-deprivation judicial remedies with respect to property claims by prison inmates. See Jimenez v. Goord, 205 F.3d 1323 (2d Cir. 1999). Accordingly, Plaintiff's allegation that certain officers took his possessions from him at the time of his arrest, in return for which he received a receipt, fails to state a claim for unconstitutional deprivation of property. This claim will be dismissed with prejudice.

F.   Perjury before Grand Jury

Plaintiff alleges that "if the Defendant N.Y.P.D. and its agents Detectives Dexter Honora and Steven went before the 'Grand Jury' ... and testified there that the plaintiff had committed a crime of murder in the 'Sherman' Hotel in 2003, then they committed perjury ... ." This Court construes this as an attempt to state a claim for deprivation of liberty without due process.

22

This kind of hypothetical and conditional allegation fails to state a claim.  Moreover, witnesses, including police witnesses, are absolutely immune from civil damages based upon their testimony.  See Briscoe v. LaHue, 460 U.S. 325, 341-46 (1983).[9]  "The penalty for false testimony is ... a potential prosecution for perjury."  Jones v. Cannon, 174 F.3d 1271, 1281 (11th Cir. 1999).  Accordingly, the claim based upon the possibility of perjury before the Grand Jury must be dismissed with prejudice.

G.   Conspiracy

Plaintiff's Complaint is peppered with allegations of a race-based "conspiracy" to deprive him of his civil rights.  Some of Plaintiff's claims rest explicitly upon proof of a conspiracy. None of the allegations of the Complaint, however, are sufficient to sustain a claim of "conspiracy," except with respect to certain claim against Detectives Honora and Steven, who allegedly acted in concert in arresting Plaintiff.

In 2007, the Supreme Court addressed the question of what a plaintiff must plead in order to state a conspiracy claim under § 1 of the Sherman Act.  See Bell Atlantic Corp. v. Twombly, 127

---

[9] This immunity applies to alleged conspiracy claims to present false testimony brought under 42 U.S.C. §§ 1985 and 1986. Delaney v. Ashcraft, 2006 WL 2265228, *8 (W.D. Ark. 2006) (citing Snelling v. Westoff, 972 F.2d 199, 200 (8th Cir. 1992)).

S.Ct. 1955, 1964-66 (2007).  The Court first reviewed historical

pleading requirements.

> Federal Rule of Civil Procedure 8(a)(2) requires only
> "a short and plain statement of the claim showing that
> the pleader is entitled to relief," in order to "give
> the defendant fair notice of what the ... claim is and
> the grounds upon which it rests."  While a complaint
> attacked by a Rule 12(b)(6) motion to dismiss does not
> need detailed factual allegations, a plaintiff's
> obligation to provide the "grounds" of his
> "entitle[ment] to relief" requires more than labels and
> conclusions, and a formulaic recitation of the elements
> of a cause of action will not do, see Papasan v.
> Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d
> 209 (1986) (on a motion to dismiss, courts "are not
> bound to accept as true a legal conclusion couched as a
> factual allegation").  Factual allegations must be
> enough to raise a right to relief oabove the
> speculative level, on the assumption that all ethe
> allegations in the complaint are true (even if doubtful
> in fact).

Twombly, 127 S.Ct. at 1964-65 (citations and footnote omitted).

The Court then applied these general standards to the Sherman Act

conspiracy claim.

> In applying these general standards to a § 1
> [conspiracy] claim, we hold that stating such a claim
> requires a complaint with enough factual matter (taken
> as true) to suggest that an agreement was made.  Asking
> for plausible grounds to infer an agreement does not
> impose a probability requirement at the pleading stage;
> it simply calls for enough fact to raise a reasonable
> expectation that discovery will reveal evidence of
> illegal agreement.  And, of course, a well-pleaded
> complaint may proceed even if it strikes a savvy judge
> that actual proof of those facts is improbable, and
> "that a recovery is very remote and unlikely."  In
> identifying facts that are suggestive enough to render
> a § 1 conspiracy claim plausible, we have the benefit
> of the prior rulings and considered views of leading
> commentators, already quoted, that lawful parallel
> conduct fails to bespeak unlawful agreement.  It makes
> sense to say, therefore, that an allegation of parallel

conduct and a bare assertion of conspiracy will not
suffice.  Without more, parallel conduct does not
suggest conspiracy, and a conclusory allegation of
agreement at some unidentified point does not supply
facts adequate to show illegality.  Hence, when
allegations of parallel conduct are set out in order to
make a § 1 claim, they must be placed in a context that
raises a suggestion of a preceding agreement, not
merely parallel conduct that could just as well be
independent action.

The need at the pleading stage for allegations
plausibly suggesting (not merely consistent with)
agreement reflects the threshold requirement of Rule
8(a)(2) that the "plain statement" possess enough heft
to "sho[w]" that the pleader is entitled to relief."  A
statement of parallel conduct, even conduct consciously
undertaken, needs some setting suggesting the agreement
necessary to make out a § 1 claim; without that further
circumstance pointing toward a meeting of the minds, an
account of a defendant's commercial efforts stays in
neutral territory.  An allegation of parallel conduct
is thus much like a naked assertion of conspiracy in a
§ 1 complaint: it gets the complaint close to stating a
claim, but without some further factual enhancement it
stops short of the line between possibility and
plausibility of "entitle[ment] to relief."

Twombly, 127 S.Ct. at 1965-66 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the

context of a § 1983 civil rights action, that the Twombly

pleading standard applies outside the § 1 antitrust context in

which it was decided.  See Phillips v. County of Allegheny, 2008

WL 305025, § II.C. (3d Cir. Feb. 5, 2008) ("we decline at this

point to read Twombly so narrowly as to limit its holding on

plausibility to the antitrust context").

Context matters in notice pleading.  Fair notice under
Rule 8(a)(2) depends on the type of case -- some
complaints will require at least some factual
allegations to make out a "showing that the pleader is

entitled to relief, in order to give the defendant fair
notice of what the ... claim is and the grounds upon
which it rests." Indeed, taking Twombly and the
Court's contemporaneous opinion in Erickson v. Pardus,
127 S.Ct. 2197 (2007), together, we understand the
Court to instruct that a situation may arise where, at
some point, the factual detail in a complaint is so
undeveloped that it does not provide a defendant the
type of notice of claim which is contemplated by
Rule 8. Put another way, in light of Twombly, Rule
8(a)(2) requires a "showing" rather than a blanket
assertion of an entitlement to relief. We caution that
without some factual allegation in the complaint, a
claimant cannot satisfy the requirement that he or she
provide not only "fair notice," but also the "grounds"
on which the claim rests.

Phillips, 2008 WL 305025 at § II.A (citations omitted).

Here, Plaintiff's conclusory allegations of "conspiracy"
amount to nothing more than allegations of "parallel conduct," if
that, without any allegations of facts suggesting a preceding
meeting of the minds among the alleged conspirators.
Accordingly, except as specified herein with respect to certain
claims asserted against Detectives Honora and Stevens, all claims
resting upon establishment of a "conspiracy" will be dismissed
for failure to state a claim.

H.  Federal Statutory Claims

In shotgun fashion, Plaintiff alleges claims under 18 U.S.C.
§ 1201 (Kidnapping); 18 U.S.C. § 241 (Criminal Conspiracy against
federal civil rights); 18 U.S.C. § 242 (Criminal Conspiracy for
deprivation of rights under color of law); Article II, Section 2,
Clause 2 of the United States Constitution (powers of the
President); Article III, Section 2, Clause 2 of the United States

26

Constitution (jurisdiction of the Supreme Court); and 18 U.S.C.

§ 3182 (Extradition).

None of these provisions give rise to a private right of

action.  For example, Section 242 is a federal criminal statute.

Pursuant to § 242, in pertinent part:

> Whoever, under color of any law, statute,
> ordinance, regulation, or custom, willfully subjects
> any person in any State ... to the deprivation of any
> rights, privileges, or immunities secured or protected
> by the Constitution or laws of the United States, or to
> different punishments, pains, or penalties, on account
> of such person being an alien, or by reason of his
> color, or race, than are prescribed for the punishment
> of citizens, shall be fined under this title or
> imprisoned not more than one year, or both; ... .

18 U.S.C. § 242.

As detailed above, it is Plaintiff's contention that the

named defendants violated his civil rights.  Authorities are in

agreement, however, that the submission by a private party of a

complaint under § 242 is not the appropriate manner in which to

initiate criminal proceedings.

> A private person may not prosecute a federal
> criminal complaint.  Prosecution of a federal crime is
> the prerogative of the United States through the
> attorney general and his delegates, the United States
> attorneys.  28 U.S.C. § 516 ("Except as otherwise
> authorized by law, the conduct of litigation in which
> the United States, an agency, or officer thereof is a
> party, or is interested, and securing evidence
> therefor, is reserved to officers of the Department of
> Justice, under the direction of the Attorney
> General."); The Confiscation Cases, 74 U.S. 454, 457
> (1868) ("Public prosecutions, until they come before
> the court to which they are returnable, are within the
> exclusive direction of the district attorney, [...]");
> ...; United States ex rel. Savage v. Arnold, 403

27

F.Supp. 172, 174 (E.D. Pa. 1975); <u>United States v.</u>
<u>Panza</u>, 381 F.Supp. 1133, 1133-35 (W.D. Pa. 1974)
(reciting history of rule); ... .

<u>Peters v. Beard</u>, 2006 WL 2174707 (M.D. Pa. June 13, 2006) (Report
and Recommendation) (citations omitted), <u>adopted by</u>, 2006 WL
2175173 (M.D. Pa. Aug. 1, 2006).  <u>See also</u> <u>Higgins v. Neal</u>, 52
F.3d 337, 1995 WL 216920 (10th Cir. 1995) (unpubl.) (collecting
cases); <u>Caracter v. Avshalumov</u>, 2006 WL 3231465 (D.N.J. Nov. 8,
2006) (collecting cases); <u>Stoll v. Martin</u>, 2006 WL 2024387 (N.D.
Fla. July 17, 2006) (collecting cases).

Nevertheless, if a purported criminal complaint warrants
action, a court may refer it to the United States Attorney for
action.  <u>Savage</u>, 403 F.Supp. at 174.  The commencement of a
criminal action is governed in part by Federal Rules of Criminal
Procedure 3 and 4, which provide some guidance in determining
whether a purported criminal complaint merits reference to the
United States Attorney.  Rule 3 provides, "The complaint is a
written statement of the essential facts constituting the offense
charged.  It must be made under oath before a magistrate judge
or, if none is reasonably available, before a state or local
judicial officer."  Rule 4 provides, in pertinent part, "If the
complaint or one or more affidavits filed with the complaint
establish probable cause to believe that an offense has been
committed and that the defendant committed it, the judge must
issue an arrest warrant to an officer authorized to execute it."

28

Here, Plaintiff's allegations are not sufficient to establish probable cause to believe that the defendants violated § 242[10] or any other federal criminal statute. This Court perceives no reason, on the basis of the facts before it, to refer this matter to the United States Attorney.

Accordingly, all of these federal statutory claims will be dismissed with prejudice.

I.   Malicious Prosecution

Plaintiff alleges generally that he was subjected to a "malicious prosecution" in New York.

In order to state a prima facie case for a § 1983 claim of malicious prosecution pursuant to the Fourth Amendment, a plaintiff must establish the elements of the common law tort as it has developed over time, Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996), and that there has been a seizure, Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998); Luthe v. Cape May, 49 F. Supp.2d 380, 393 (D.N.J. 1999). Under New Jersey law, the common law tort elements of a malicious prosecution action arising out of a criminal prosecution are:  (1) the criminal action was instituted by the defendant against the plaintiff, (2) it was actuated by malice, (3) there was an absence of probable cause for the proceeding, and (4) the criminal

_____

[10] The elements of a violation under § 242 are set forth in United States v. Senak, 477 F.3d 304 (7th Cir.), cert. denied, 414 U.S. 856 (1973).

29

proceeding was terminated favorably to the plaintiff. Lind v. Schmid, 67 N.J. 255, 262 (1975). A plaintiff attempting to state a malicious prosecution claim must also allege that there was "'some deprivation of liberty consistent with the concept of seizure.'" Gallo, 161 F.3d at 222 (quoting Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995)); see Albright v. Oliver, 510 U.S. 266 (1994). Ordinarily, the statute of limitations on a malicious prosecution claim begins to run on the date plaintiff receives a favorable termination of the prior criminal proceeding. Heck v. Humphrey, 512 U.S. 477, 489 (1994).

Here, Plaintiff has failed to allege a favorable termination of the New York criminal proceedings. Accordingly, this claim must be dismissed without prejudice.

J. International Convention

Plaintiff claims that the circumstances of his arrest and detention violated the International Convention on the Elimination of all Forms of Racial Discrimination ("CERD"). See International Convention on the Elimination of All Forms of Racial Discrimination, Dec. 21, 1965, 660 U.N.T.S. 195 (ratified by the United States on June 24, 1994).

The purpose of the CERD is "to adopt all necessary measures for speedily eliminating racial discrimination in all its forms and manifestations, and to prevent and combat racist doctrines and practices in order to promote understanding between races and

30

to build an international community free from all forms of racial
segregation and racial discrimination ... ." Id. at 54.

As numerous courts have recognized, this treaty does not
give rise to a private cause of action, as it is neither self-
executing nor has Congress enacted enabling legislation. See,
e.g., Akuma v. New Jersey Comm'r of Dept. of Labor and Workforce
Development, 2008 WL 4308229, *1 n.1 (D.N.J. Sept. 17, 2008);
Gambaro v. U.S., 2007 WL 2245907, *4 (D.R.I. 2007); Rotar v.
Placer County Superior Court, 2007 WL 1140682, *1 (E.D. Cal.
2007), R&R Adopted by, 2008 WL 4463787 (E.D. Cal. Oct. 2, 2008);
Johnson v. Quander, 370 F.Supp.2d 79, 100-01 (D.D.C. 2005),
aff'd, 440 F.3d 489 (D.C. Cir.), cert. denied, 127 S.Ct. 103
(2006); Hayden v. Pataki, 2004 WL 1335921, *7 (S.D.N.Y. June 14,
2004); U.S. v. Perez, 2004 WL 935260, *17 (D. Conn. April 29,
2004). Accordingly, this claim will be dismissed with prejudice.

K.    Pendent State Law Claims

Pursuant to 28 U.S.C. § 1367, "in any civil action of which
the district courts shall have original jurisdiction, the
district courts shall have supplemental jurisdiction over all
other claims that are so related to claims in the action within
such original jurisdiction that they form part of the same case
or controversy under Article III of the United States
Constitution."

1.  <u>Malicious Absue of Process</u>

Under New Jersey law, to sustain a cause of action for abuse of process, one must show: (1) an improper, illegal, and perverted use of the legal procedure, (2) an ulterior motive in initiating the legal process, and (3) some further act after the issuance of process representing the perversion of the legitimate use of the process.  <u>See generally</u> <u>Simone v. Golden Nugget Hotel and Casino</u>, 844 F.2d 1031, 1036-1039 (3d Cir. 1988) (collecting New Jersey cases).  "Bad motives or malicious intent leading to the institution of a civil [or criminal] action are insufficient to support a cause of action for malicious abuse of process.  A showing of some coercive or illegitimate use of the judicial process is necessary to a claim that there has been an abuse of the process."  <u>Id.</u> at 1037 (citations omitted).

> The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club.  There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.

<u>Id.</u> at 1037 (quoting W. Prosser & W. Keeton, <u>The Law of Torts</u> § 121 at 898 (5th ed. 1984) and citing <u>Earl v. Winne</u>, 34 N.J. Super. 605, 615 (Law Div. 1955)).  "The legal pursuit of one's right, no matter what may be the motive of the promoter of the

32

action, cannot be deemed either illegal or inequitable." Id. at 1039 (quoting Davis v. Flagg, 35 N.J.Eq. 491, 494 (1882)).

To state an abuse of process claim under New York law, a plaintiff must establish that the defendant employed a regularly issued legal process to compel performance or forbearance of some act with the intent to do harm without excuse of justification, and in order to obtain a collateral objective that is outside the legitimate ends of the process. See generally V.S. ex rel. T.S. v. Muhammad, 2008 WL 4446671 *20 (E.D.N.Y. 2008) (collecting cases). Again, a malicious motive alone does not give rise to a cause of action for abuse of process. Id.

Although Plaintiff asks this Court to exercise pendent jurisdiction over his state law "abuse of process" claim, he fails to indicate against whom this claim is asserted. This Court cannot discern that Plaintiff has stated an abuse of process claim against any of the fifty defendants named in the Complaint. Accordingly, this claim will be dismissed without prejudice.

2.   Kidnapping

Plaintiff asserts a state-law claim against Defendants Honora and Steven for "kidnapping." He also asserts that Defendant Margo Green "conspired" with Defendants Honora and Steven to kidnap Plaintiff, by contacting them and telling them

33

that he was wanted for questioning about a crime and telling them where he could be found.

Under New Jersey law, "'[f]alse arrest or false imprisonment is the constraint of the person without legal justification.'" Gibson v. Superintendent of NJ Dept. of Law and Public Safety - Division of State Police, 411 F.3d 427, 451 (3d Cir. 2005) (citations omitted), cert. denied sub nom, Verniero v. Gibson, 547 U.S. 1035 (2006). "The tort of false arrest consists of: (1) an arrest or detention of the person against his will; (2) which is done without proper legal authority or legal justification." Id.

Under New York law, the elements of a false arrest or false imprisonment claim are "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).

This claim will be permitted to proceed as against Defendants Honora and Steven. With respect to Defendant Margo Green, however, the allegations are not sufficient to state a claim for conspiracy to unlawfully confine Plaintiff under either New Jersey or New York law. Plaintiff does not allege that Defendant Margo Green intended by her statement to cause Plaintiff's false arrest or false imprisonment, as opposed to

34

police questioning.[11]   Moreover, the Court notes that Plaintiff
admits in the Complaint that he was wanted for murder in Chicago.

    3.   <u>Libel/Slander Claims</u>

    Plaintiff alleges in conclusory fashion that ten defendant
news organizations acted in concert with one another and
conspired with Defendant Honora and the New York Police
Department to defame, libel, and slander him by calling him a
"serial killer" following his arrest.

    The elements of a cause of action for slander under New York
law are (1) a defamatory statement of fact, (2) that is false,
(3) published to a third party, (4) of and concerning the
plaintiff, (5) made with the applicable level of fault on the
part of the speaker, (6) either causing special harm or
constituting slander per se, and (7) not protected by privilege.
<u>See</u> <u>Albert v. Loksen</u>, 239 F.3d 256, 265-66 (2d Cir. 2001).  To
recover in libel under New York law, a plaintiff must establish:
(1) a written defamatory statement of fact concerning the
plaintiff, (2) publication to a third party, (3) fault, (4)
falsity of the defamatory statement, and (5) special damages or
per se actionability (defamatory on its face).  <u>See</u> <u>Celle v.</u>

---

    [11] In the text of the Complaint, Plaintiff also asserts that
the Sherman Hotel conspired with the New York Police Department
to have him falsely arrested by reporting the murder and by
reporting that Plaintiff was a guest there.  Again, these
allegations are not sufficient to state a claim against the
Sherman Hotel for conspiracy to falsely arrest or falsely
imprison Plaintiff.

Filipino Reporter Enterprises Inc., 209 F.3d 163, 176 (2d Cir. 2000).

Under New Jersey law, to establish a prima facie case of defamation, whether denominated libel or slander, a plaintiff must show that the defendant communicated a false statement about plaintiff to a third person that harms plaintiff's reputation in the eyes of the community or deters third persons from associating with the plaintiff. Whether a statement is defamatory is a matter of law to be determined by the court. Dello Russo v. Nagel, 358 N.J.Super. 254, 262-264 (App. Div. 2003).

The Court finds that this claim is not a proper one for joinder with the other claims asserted here. See Fed.R.Civ.P. 20(a)(2). All other claims which will proceed here share common questions of law and fact regarding the lawfulness of Plaintiff's arrest and detention. The accuracy of news organizations' reporting regarding Plaintiff's criminal record and status as a suspect in various criminal matters, as well as the issue of the damages flowing from such reporting, present completely distinct factual and legal questions. The defamation/libel/slander claims will be dismissed without prejudice.

V. CONCLUSION

For the reasons set forth above, certain claims will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and

36

1915A(b)(1), for failure to state a claim.  However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome certain deficiencies noted herein, the Court will grant Plaintiff leave to file an amended complaint addressing those claims dismissed without prejudice.[12]  An appropriate order follows.

Dennis M. Cavanaugh
United States District Judge

Dated: 11/17/08

---

[12] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id.

37