NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EMERSON TUCKER, :<br>:<br>Plaintiff, :<br>:<br>v. :<br>:<br>NEW YORK POLICE DEPARTMENT, :<br>*et. al* :<br>:<br>Defendants. :<br>: | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 08-CV-2156 (DMC) |

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

This matter comes before the Court upon several motions by *pro se* Plaintiff Emerson Tucker ("Plaintiff"), and motions by Defendants Pat Quinn, the Chicago Police Department, Detective Dexter Honora. Plaintiff asks this Court to: **(A)** grant his renewed motion for a preliminary injunction and/or temporary restraining order, **(B)** grant him leave to amend his Complaint to add a claim for denial of medical treatment during his pre-trial detention in New York and Illinois, **(C)** grant him an extension of time to serve his Amended Complaint upon various defendants, **(D)** grant his motion to amend his Amended Complaint to substitute Detective Stephano Braccini for John Doe #7. As to Defendants' motions: **(E)** Defendant Pat Quinn moves to dismiss Plaintiff's claims for lack of subject matter jurisdiction; **(F)** Defendant Chicago Police Department moves to dismiss for failure to state a claim; **(G)** Defendant Detective Honora moves to stay this matter pending the outcome of Plaintiff's parallel criminal proceedings which are ongoing in Illinois and New York.

For the reasons stated below, Plaintiff's motions are **denied**, and Defendants' motions are **granted**.

# BACKGROUND

Plaintiff is a pretrial detainee at the Cook County Jail in Chicago, Illinois. Plaintiff alleges that while he was in Newark, New Jersey on or about May 14, 2007, he was illegally abducted by members of the New York Police Department ("NYPD"), including Detective Dexter Honora.

Plaintiff alleges that he was forced to go with two NYPD detectives to New York in connection with a homicide investigation. Plaintiff alleges that the detectives detained him, without his consent, without a warrant and without probable cause. Plaintiff brings a wide variety of claims related to the police conduct, including, but not limited to, false arrest, excessive force, wrongful retention of property and interference with the administration of justice, pursuant to 42 U.S.C. §§ 1981, 1983, 1985. Plaintiff also brings claims against a number of news organizations for allegedly defaming him by calling him a "serial killer" following his arrest. Additionally, he now seeks to assert a claim for denial of medical treatment during the course of his pre-trial detention.

Plaintiff's allegations were recited in more detail in Tucker v. New York Police Dep't, 2008 U.S. Dist. LEXIS 93691 (D.N.J. Nov. 17, 2008).

# DISCUSSION

**A.  PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff asks this Court to issue injunctive relief ordering the return of personal property seized during his arrest. Specifically, Plaintiff asks the Court to order that $7,192 be returned to him.

A court should grant injunctive relief where (1) the plaintiff has a reasonable probability of success on the merits, (2) the plaintiff faces immediate and irreparable harm, (3) the harm to the plaintiff outweighs any potential harm to the defendants and (4) the public interest favors granting the plaintiff preliminary relief. Saudi Basic Indus. Corp. v. Exxon Corp., 364 F.3d 106, 112 n.6 (3d

Cir. 2004). Accordingly, Plaintiff must establish each of these elements with respect to his wrongful retention of property claim.

This Court previously dismissed a similar application by Plaintiff seeking this same relief. See Tucker v. N.Y. Police Dep't, 2009 U.S. Dist. LEXIS 28458, at *2 (D.N.J. Apr. 6, 2009). Plaintiff, again, has failed to demonstrate that issuance of injunctive relief is proper.

First, Plaintiff must demonstrate that there is a likelihood of success on the merits of his claim. In Plaintiff's renewed application, he asserts that he will likely prevail on the merits of his "claims of false arrest, false imprisonment, unlawful arrest, [] illegal arrest and detention, malicious prosecution and for the failure of the Defendants to comply with the State and federal extradition Act." This assertion is inapposite–Plaintiff must demonstrate that there is a likelihood of success that he will prevail on his **wrongful retention of property claim**. That Plaintiff may prevail on his other claims is irrelevant in determining whether injunctive relief is appropriate here.

Second, Plaintiff has not demonstrated immediate and irreparable harm. Plaintiff asserts that he will suffer irreparable harm if the money is not returned to him, because he will be unable to pay the filing fees to initiate a law suit in the Federal District of Illinois. Without such a suit, he argues, he will continue to suffer denial of medical treatment. Plaintiff, however, is not without recourse, as he may file an action asserting such claims and apply for *in forma pauperis* status. He asserts that he cannot proceed, as such status was denied by that District Court in Illinois. These facts do not indicate to this Court that irreparable harm is imminent. Instead, it appears that Plaintiff is, again, conflating his various claims (in this Court and others) in an effort to satisfy the requirements for

injunctive relief.[1]  This is inappropriate–Plaintiff must demonstrate (1) a reasonable probability of success on the merits, (2) immediate and irreparable harm, (3) harm to the plaintiff outweighing any potential harm to the defendants and (4) the public interest favors granting the plaintiff preliminary relief, all with respect to his wrongful retention of property claim.  See Saudi Basic, 364 F.3d at 112 n.6.  Plaintiff has failed to do so, as he cannot make the first two showings necessary to a successful application for injunctive relief.

Plaintiff's request for injunctive relief is denied.

### B.    PLAINTIFF'S MOTION TO AMEND

Plaintiff, alternatively, moves to amend his Complaint to assert claims for denial of medical treatment.  This motion is denied.

Federal Rule of Civil Procedure 20 provides, in relevant part, that "all persons . . . may be joined in one action as defendants if . . . any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action."  Plaintiff's denial of medical treatment claims against new defendants are premised upon different questions of fact and law than his underlying claims for false arrest, excessive force, interference with the administration of justice, etc.  See Green v. Werholtz, 2009 U.S. Dist. LEXIS 35247, at *25-26 n.18 (D. Kan. April 24, 2009); Browder v.

---

[1] Plaintiff also requests a preliminary injunction to address his concerns regarding library access. The Court has already denied this request, when Plaintiff requested this relief in an application for mandamus relief.  The Court noted that "Prison regulations which reasonably limit times, places and the manner in which inmates may access the law library do not transgress constitutional protection of access to the courts so long as regulations do not frustrate access."  See Johnson v. Avery, 393 U.S. 483 (1968); Gittlemacker v. Prasse, 428 F.2d 1 (3d Cir. 1970).  Plaintiff's substantial filing in this matter indicates that his access to the courts is not being frustrated.

Ankrom, 2006 U.S. Dist. LEXIS 50785, at *9-10 (W.D. Ky. July 20, 2006). Accordingly, such claims may not be joined in this action.

Plaintiff's motion for leave to amend his complaint to assert claims for denial of medical treatment is denied.

### C.    PLAINTIFF'S MOTION FOR ADDITIONAL TIME TO SERVE HIS AMENDED COMPLAINT

Plaintiff requests an extension of time to serve his Amended Complaint on: the New York Police Department ("NYPD"), Detective Dexter Honora, Ray Kelly, Mayor Michael Bloomberg, New York City Department of Corrections ("DOC"), Martin Horn and the City of New York and its employees or officials. Plaintiff's request is denied.

First, Detective Honora has been served, and filed a timely answer. Next, service upon the NYPD, Ray Kelly, Mayor Michael Bloomberg, the DOC, and Martin Horn is now moot, as they have all been dismissed from this action. See Order of August 31, 2009;[2] Tucker v. New York Police

---

[2] On August 31, 2009 this Court terminated the following parties from this action: the New York City Department of Corrections, the Civilian Complaint Review Board, the New Police Department of the City of New York; Essex County, New Jersey; Mike Bloomberg; Ray Kelly; Kings County, New York; Martin Horn; the Borough of Brooklyn; Precinct 84 of the Police Department of the City of New York; the Office of the District Attorney, New York; Unidentified John/Jane Does of the City of New York; Unidentified John/Jane Does of the Borough of Brooklyn; the City of Newark, New Jersey; the Police Department of Newark, New Jersey; the Mayor of City of Newark, New Jersey; Jon Corzine; Unidentified John/Jane Does of the City of Newark, New Jersey; the City of Chicago; Jody P. Weis, Superintendent of the Chicago Police Department; the Office of the District Attorney, Cook County; Anita Alverz, District Attorney, Cook County; Unidentified John/Jane Does of Chicago; and Thomas Dart. Many of these parties were previously dismissed by this Court in Tucker, 2008 U.S. Dist. LEXIS 93691, at *14 n.5, 19, 22 (D.N.J. Nov. 17, 2008).

On February 23, 2010, the Court dismissed the following parties: Daily News, L.P. (incorrectly sued as "The New York Daily Newspaper"); Newark Morning Ledger Co.; American Broadcasting Companies, Inc. (incorrectly sued as "ABC Television News Broadcast"); NYP Holdings, Inc. (incorrectly sued herein as "The New York Post Newspaper"); The New York Times Co.; NBC Universal Inc. (incorrectly sued as NBC Television Broadcast); CBS Television News Broadcast; CNN Television News Broadcast; Chicago Sun-Times Newspaper; the Chicago Tribune Company; and, the Chicago Tribune Newspaper.

Dep't, 2008 U.S. Dist. LEXIS 93691 (D.N.J. Nov. 17, 2008). For these reasons, Plaintiff's request for an enlargement of time to serve the above-mentioned Defendants is denied as moot.[3]

### D. PLAINTIFF'S MOTION TO AMEND HIS AMENDED COMPLAINT TO SUBSTITUTE DETECTIVE STEPHANO BRACCINI FOR JOHN DOE #7

Plaintiff asks this Court to permit him to substitute NYPD Detective Stephano Braccini for "John Doe #7" and/or "Detective Stevens," and have the U.S. Marshals effect service upon him.

Plaintiff refers throughout his complaint to Detective Stevens, however, it appears that he was referring to Detective Stephano Braccini. Defendant Honora responds that an amendment would be inappropriate, as the statute of limitations ran on May 14, 2009. Honora argues, then, that Plaintiff can no longer assert a claim against Braccini.

To determine whether the statute of limitations prevents Plaintiff from substituting "Detective Stephano Braccini" into the Complaint, the Court must assess whether Plaintiff's claim would "relate back" to the date of filing of the initial complaint pursuant to FED. R. CIV. P. 15(c).

Federal Rule of Civil Procedure 15(c) "enumerates three distinct prerequisites for an amendment to relate back to the original complaint: (1) the claims in the amended complaint must arise out of the same occurrences set forth in the original complaint, (2) the party to be brought in by amendment must have received notice of the action within 120 days of its institution, and (3) the party to be brought in by amendment must have known, or should have known, that the action would have been brought against the party but for a mistake concerning its identity." Arthur v. Maersk,

---

[3] To the extent that Plaintiff requests that the Court extend his time for service **with respect to any other defendants who remain in this case**, Plaintiff must demonstrate that such an extension is proper pursuant to Federal Rule of Civil Procedure 4(m). Although this case will be stayed pending the resolution of Plaintiff's criminal proceedings (see Section G, infra), at such time as this case is reinstated, Plaintiff may move for an extension of time to effect service as to said parties**.**

Inc., 434 F.3d 196, 203 (3d Cir. 2006).  The first requirement is satisfied, as the claims in Plaintiff's proposed Amended Complaint are the same as those in the initial complaint.

The second requirement, however, is not met, as Plaintiff has not shown that Detective Braccini received notice of the action within 120 days of its institution.  Although Plaintiff does not make any arguments on this point, the Court will consider whether notice can be imputed to Detective Braccini.  The Third Circuit has held that the fact that Detectives Honora and Braccini (if he had been properly named as a Defendant in this action) would be represented by the same counsel, i.e., the City of New York Law Department, is not alone sufficient to impute notice to Detective Braccini.  See Garvin v. City of Philadelphia, 354 F.3d 215, 225-27 (3d Cir. Pa. 2003).  Instead, Plaintiff must demonstrate that there was "some communication or relationship" between Detective Honora's counsel and Braccini (who was named as "John Doe #7" and/or "Detective Stevens") prior to the expiration of the 120-day period.  Id. at 225-27 (noting that plaintiff had the "opportunity to take discovery on the communications between the City Solicitor's office and the four officers she sought to substitute for the John Doe named in the original complaint but did not do so.").

Plaintiff, through discovery, may be able to identify some indication that Detective Braccini had notice of the action.  At such time as Plaintiff provides such evidence, the Court will reconsider whether "relation back" is appropriate here.  See id.  At this point, however, Defense counsel denies that any member of the NYPD except for Detective Honora had notice of this suit.  Plaintiff has not provided any evidence to the contrary, and the Third Circuit has instructed against any presumption that such notice was received.  See id.  As such, Plaintiff has not demonstrated that he can satisfy the notice requirement of 15(c) at this time, and his amendment, therefore, cannot  "relate back" to his original complaint for statute of limitations purposes.  Plaintiff, then, has not shown that his

claim against Detective Bracinni would be properly filed within the statutory period.

Plaintiff's motion to amend his Amended Complaint is denied without prejudice. However, at such time as this case is reinstated (see Section G, infra), Plaintiff will be permitted to renew his motion for leave to amend the complaint to add Detective Braccini as a party, and provide additional evidence in support of the motion.[4]

### E. DEFENDANT PAT QUINN'S MOTION TO DISMISS PLAINTIFF'S CLAIM FOR LACK OF JURISDICTION

Defendant Pat Quinn, Governor of the State of Illinois, moves to dismiss Plaintiff's claim for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1).

As discussed above, Plaintiff asserts claims against a variety of Defendants, many of whom are (or were) government officials. One such official was Governor Rod Blagojevich. Plaintiff contends that he was denied his due process rights by being extradited to Illinois without first receiving a hearing, and that the Governor of Illinois had the duty to ensure that Plaintiff received a pre-extradition hearing.

Plaintiff brought claims against the Governor in his official and individual capacities. Pursuant to FED. R. CIV. P. 25(d)(1), Pat Quinn, the current governor of Illinois, automatically substitutes for defendant Blagojevich with respect to the claims against the former Governor in his official capacity. Defendant Quinn now moves to dismiss such claims pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction–specifically he asserts that Defendant Quinn (1) is

---

[4] The Third Circuit in Garvin held that "the district court was correct when it declined to impute notice to the four officers under the shared attorney method," because the plaintiff "ha[d] not come forth with evidence that gives rise to the inference that Deputy City Solicitor Sitarski or anyone else in the City Solicitor's office had any communication or relationship whatsoever with the four officers within the 120-day period so as to justify imputing notice to the officers." Id. at *17-18.

not properly party to this action, and (2) is entitled to sovereign immunity.

        1. *A Proper Party under § 1983*

Plaintiff's claim alleging constitutional violations must be dismissed as to Defendant Quinn (in his official capacity) because Governor Quinn does not constitute a "person amenable to suit" for the purposes of § 1983.  See Reed v. Straniero, 2009 U.S. Dist. LEXIS 91921, at *18-19 (D.N.J. 2009).  To be amenable to suit under § 1983, an official must be acting outside the scope of his or her role as a public official.  Id. at 19.  Plaintiff has alleged no facts indicating that Defendant Quinn was acting in his individual capacity.[5]

        2. *Eleventh Amendment Immunity*

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."  Absent a state's consent, then, it is immune from suit.  Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99 (1984).  Accordingly, state officials acting in their official capacities may generally not be sued for monetary relief under § 1983.  See Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 268 (1997); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  Although Courts recognize limited exceptions to sovereign immunity, none is applicable here.[6]

For the reasons stated, Plaintiff's claims against the Governor of the State of Illinois in

---

[5] With respect to Plaintiff's individual capacity claims regarding his allegedly improper extradition, they have been brought against former Governor Rod Blagojevich.

[6] There are limited exceptions to sovereign immunity, e.g., consent or an explicit Congressional grant of authority, see Tennessee v. Lane, 541 U.S. 509, 517 (2004) (internal citations omitted); Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976).

his official capacity (Pat Quinn, and previously, Rod Blagojevich) are dismissed.

### F. DEFENDANT CHICAGO POLICE DEPARTMENT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Plaintiff brings claims against the Chicago Police Department ("the CPD") in his Amended Complaint. Defendant CPD moves to dismiss the claims for failure to state a claim upon which relief may be granted. CPD contends that it is improperly named as a defendant in this suit because it an organizational division of the City of Chicago, and thus not subject to suit.

Operating departments of the City of Chicago, such as the Chicago Police Department, are not suable entities. Chan v. City of Chicago, 777 F. Supp. 1437, 1442 (N.D. Ill. 1991). Under Illinois law, "a party to a litigation must have legal existence, either natural or artificial, to sue or be sued." Jackson v. Village of Rosemont, 180 Ill. App.3d 932, 937 (1st Dist. 1988), appeal denied, 125 Ill. 2d 565 (1989) (stadium owned by village not subject to suit because it is not a legal entity); see also Bonilla v. City Council of City of Chicago, 809 F. Supp. 590, 600-01 (N.D. Ill. 1992) (absent specific statutory authority, city council is not a suable entity for purposes of challenging aldermanic remap of City of Chicago's wards); Dr. Martin Luther King, Jr. Movement, Inc. v. City of Chicago, 435 F. Supp. 1289, 1294 (N.D. Ill. 1977) (finding that City of Chicago Department of Streets and Sanitation not a suable entity because it is merely an organizational division of City and thus without independent legal status). Accordingly, the CPD is not properly a party to this civil suit.

Defendant Chicago Police Department's motion to dismiss for failure to state a claim is granted.

### G.  DEFENDANT HONORA'S MOTION TO STAY THIS MATTER PENDING THE OUTCOME OF PLAINTIFF'S PARALLEL CRIMINAL PROCEEDINGS

Defendant Honora moves to stay this matter pending Plaintiff's parallel criminal proceedings.

As noted above, Plaintiff's civil suit includes claims for false arrest/imprisonment, excessive force and interference with the administration of justice. These claims largely pertain to the allegedly unlawful conduct of Defendants, as Plaintiff asserts that he was forced to go with two of the NYPD police officers to New York (from Newark, NJ) for questioning regarding a homicide. Subsequently, Plaintiff was extradited to Illinois where he was indicted for the murder of a young woman. Criminal proceedings (although not yet an indictment) are apparently pending in New York in relation to a separate murder investigation as well. Defendants ask this Court to stay this case pending the resolution of the criminal proceedings.

As Courts in this district have recognized, "[a] court has discretion to stay a case if the interests of justice require it." Walsh Securities, Inc. v. Cristo Property Management, Ltd., 7 F. Supp. 2d 523, 526 (D.N.J. 1998) (citing United States v. Kordel, 397 U.S. 1, 12 n. 27 (1970); see Estes-El v. Long Island Jewish Medical Center, 916 F. Supp. 268, 269 (S.D.N.Y. 1995) ("It is well settled that the Court may (and indeed, should) stay a federal Section 1983 action until resolution of parallel state court criminal proceedings."); see also Telfair v. Tandy, 2008 U.S. Dist. LEXIS 83462 (D.N.J. Oct. 20, 2008) (staying false arrest and Fourth Amendment claims). One such instance is where a plaintiff brings a civil case and there are parallel criminal proceedings. Walsh, 7 F. Supp. 2d at 526-27. The Walsh Court explained

> . . . The factors to be considered in deciding whether to grant a stay include: 1) the extent to which the issues in the criminal and civil cases overlap; 2) the status of the case, including whether the defendants have been indicted; 3) the plaintiff's interest in proceeding expeditiously weighed against the prejudice to plaintiff caused by a

>   delay; 4) the private interests of and burden on defendants; 5) the interests of the court; and 6) the public interest.

Id. (internal citations omitted).   The Court will apply each of these factors to this case.

First, the criminal and civil proceedings, here, substantially overlap.  Criminal proceedings are ongoing in both New York and Illinois.  In Illinois, an indictment has been returned.  Evidence that was obtained through the allegedly unlawful conduct of the police officers is directly relevant to Plaintiff's criminal trial in Illinois–for instance, as indicated by Plaintiff's Amended Complaint, the NYPD defendants are alleged to have taken pictures of Defendant for use in the Illinois homicide case.  Moreover, it is the allegedly unlawful arrest that lead to Plaintiff's extradition from New York to Illinois.  See Warner v. Kozub, 2007 U.S. Dist. LEXIS 3570, at *7 (D.N.J. Jan. 18, 2007) (finding that "[the police officer's] allegedly wrongful conduct was done in connection with arresting [the plaintiff] for the crime for which he is awaiting trial"); Gaskins v. Fines, 2009 U.S. Dist. LEXIS 106150, at *17 (D.N.J. Nov. 13, 2009) ("[B]ecause the allegations of the Complaint suggest that the evidence obtained in the challenged searches may affect the disposition of those pending criminal charges, this Court will stay the claim for unlawful search in violation of the Fourth Amendment, pending resolution of the criminal charges.").

Another key factor in determining whether the civil claims and criminal claims overlap is whether there exists a "danger of self-incrimination."  See Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc., 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) (internal citations omitted).   Here, such Fifth Amendment concerns exist, notwithstanding Plaintiff's assertion that he does not intend to invoke his Fifth Amendment rights.  Plaintiff asserts a claim for false arrest.  Accordingly, it is not only possible–it is fully anticipated–that Defendants would inquire into the underlying murder charges when deposing Plaintiff.  See Sterling Nat'l Bank v. A 1 Hotels

Int'l, Inc., 175 F. Supp. 2d 573, 577 (S.D.N.Y. 2001) ("[D]efendant has been indicted, his situation is particularly dangerous, and takes a certain priority, for the risk to his liberty, the importance of safeguarding his constitutional rights, and even the strain on his resources and attention that makes defending satellite civil litigation particularly difficult, all weigh in favor of his interest"). For these reasons, there is significant overlap between the civil proceedings and the two criminal proceedings.

As to the second factor, as noted above, an indictment has been returned in the Illinois criminal case. Plaintiff's criminal case (in Illinois), therefore, appears to be in a fairly advanced stage. See id. (noting that plaintiff's case was advanced, as he "has been arrested, charged, and is detained and awaiting trial[; t]hus, the status of [his] case is advanced and it appears that the state criminal trial will not be unduly delayed."); Soroush v. Ali, 2009 U.S. Dist. LEXIS 100652, at *5 (E.D. Pa. Oct. 28, 2009) ("[T]he critical question is whether an indictment has been returned against defendants, [because upon indictment the Speedy Trial Act becomes applicable and] reduces the potential for a long delay and in turn the resulting prejudice to the civil plaintiff").

Third, the Court must consider Plaintiff's interest in proceeding expeditiously weighed against the prejudice to plaintiff caused by a delay. The mere fact that additional time will pass, however, does not alone establish prejudice to the Plaintiff; to show prejudice "the plaintiff should demonstrate a unique injury, such as the dissipation of assets or an attempt to gain an unfair advantage from the stay." In re Herley Indus. Secs. Litig., 2007 U.S. Dist. LEXIS 27201, at *7 (E.D. Pa. Apr. 11, 2007); see State Farm Mut. Automobile Ins. Co. v. Beckham-Easley, 2002 U.S. Dist. LEXIS 17896, at *3 (E.D. Pa. Sept. 18 2002); Walsh Sec., 7 F. Supp. 2d at 528. Plaintiff has not done so and, accordingly, "[a] stay would preserve Plaintiff's rights in both fora and would not prematurely terminate this civil action." Warner, 2007 U.S. Dist. LEXIS 3570, at *7. Moreover,

here, any delay would be minimized by the advanced stage of the criminal proceeding in Illinois. For these reasons, the Court finds that "plaintiff's interest in proceeding expeditiously weighed against the prejudice to plaintiff caused by a delay" weighs in favor of staying this action.

Fourth, a stay would clearly benefit Defendant Honora. The Fifth Amendment concerns discussed above apply to this factor as well, as Defendant Honora will be better positioned to depose Plaintiff with regard to the civil claims once the criminal proceedings have concluded.

As to the fifth and sixth factors, the Court finds that the interests of the Court and the public weigh in favor of staying Plaintiff's civil claims at this time. The Court and the public are both better served by concluding the criminal charges before addressing the related civil claims because it will permit "the criminal prosecution of [plaintiff] to proceed unimpeded and unobstructed by any concerns that may arise in discovery in the civil case." Maloney v. Gordon, 328 F. Supp.2d 508, 510 (D. Del. 2004) (internal citations omitted); Tobin v. Gordon, 2004 U.S. Dist. LEXIS 25812, at *5-6 (D. Del. Dec. 15, 2004) (same); Javier H. v. Garcia-Botello, 218 F.R.D. 72, 74 (W.D.N.Y. 2003) ("[T]he public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant."); see also United States SEC v. Ott, 2006 U.S. Dist. LEXIS 86541 (D.N.J. Nov. 29, 2006) ("The interest of judicial economy is served because there is a reasonable expectation that the criminal investigation could clarify and define some issues in the civil matter.").

Having considered each of the Walsh factors, this Court will stay Plaintiff's civil claims pending the outcome of his related criminal proceedings. This matter, and all applications and motions that are pending at the time of this Opinion and Order, may hereby be reopened upon

application of either party within (90) days of the conclusion of the criminal proceedings.[7]

## **CONCLUSION**

      For the reasons stated, Plaintiff's motion for a preliminary injunction and/or temporary restraining order is **denied**; Plaintiff's motion for leave to amend his complaint to add a claim for denial of medical treatment is **denied**; Plaintiff's motion for an extension of time to serve his amended complaint is **denied without prejudice**; Plaintiff's motion to substitute Detective Stephano Braccini for "Detective Stevens" and/or "John Doe #7" in his Amended Complaint is **denied without prejudice**; Defendant Pat Quinn's motion to dismiss Plaintiff's claim is **granted**; Defendant Chicago Police Department's motion to dismiss Plaintiff's claim is **granted**; Defendant Detective Honora's motion to stay this matter pending Plaintiff's parallel criminal matters is **granted**.

  S/Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:        February __23__, 2010
Original:    Clerk's Office
cc:          All Counsel of Record
             The Honorable Mark Falk, U.S.M.J.
             File

---

[7] Among the pending motions is a motion for default judgment by Plaintiff (Docket Entry No. 105). Therein, Plaintiff moves for default as to a number of Defendants, many of whom were dismissed from this action. For such Defendants, Plaintiff motion for default is now moot. Nonetheless, the Court will permit Plaintiff to renew his motion as to any parties remaining in action this within (90) days of the conclusion of the criminal proceedings.